UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CORNELIUS STEWART, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 1:05-cv-58 |
| | ) | (1:01-cr-97) |
| v. | ) | *Edgar* |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM**

Petitioner, Cornelius Stewart ("Stewart"), has filed a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). [Civ. Ct. Doc. No. 1 ("Section 2255 Motion")]. The Government opposes Stewart's motion. [Civ. Ct. Doc. No. 5]. As stated *infra*, this court has concluded that a hearing is not necessary and that Stewart's Section 2255 motion is without merit and will be **DENIED**.

**I.     Procedural History and Background Facts**

On June 26, 2001, a United States grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, returned a two-count indictment against Stewart charging him with one count of possessing with intent to distribute five grams or more of a mixture and substance containing cocaine base ("crack"), and one count of possession of a firearm in furtherance of a drug trafficking crime. [Crim. Ct. Doc. No. 64]

On August 15, 2001, a United States grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, returned a superseding indictment against Stewart charging him with one count of conspiring to distribute and possess with intent to distribute 50 grams or more of a mixture and substance containing cocaine base ("crack"), one count of possessing with

intent to distribute 5 grams or more of a mixture and substance containing cocaine base ("crack"), one count of managing a drug establishment, and one count of possession of a firearm in furtherance of a drug trafficking crime. The indictment alleged that one other defendant conspired with Stewart on the conspiracy to distribute charge. On October 31, 2001, the jury returned a verdict of guilty on all charges. [Crim. Ct. Doc. No. 17]

The Presentence Report (PSR) describes the following offense conduct:

On June 20, 2001, agents with the Bureau of Alcohol, Tobacco and Firearms (ATF) assisted members of the Chattanooga Police Department (CPD) in the execution of two state search warrants. The warrants were based on controlled buys and physical surveillance of a Chattanooga, Tennessee apartment at 2000 Ocoee Street, Apartment A, and a house located at 7764 Basswood Drive. Through investigation, ATF and CPD believed that Andre Kaufman was using the Ocoee Street apartment as a drug distribution location. The 7764 Basswood Drive house was Kaufman's residence. Surveillance indicated that Kaufman traveled routinely between the Basswood Drive address and the Ocoee Street address.

The day before the searches were executed, ATF and CPD surveilled Kaufman traveling to a Knoxville, Tennessee apartment complex where he spent the night and left the following evening. Agents believe that Kaufman picked up drugs on this trip, because Kaufman drove at a high rate of speed going to Knoxville but traveled under the speed limit on his return. Upon returning to Chattanooga, Kaufman went directly to the Ocoee Street address where he was observed meeting with Cornelius Stewart. Kaufman stayed at the Ocoee Street address for approximately 30 minutes during which time at least two vehicles arrived at the location and people went inside for a short period of time before departing. After Kaufman left Ocoee Street, the warrant was executed.

Two individuals were found inside the premises, Cornelius Stewart and a juvenile. Stewart was arrested in the living room area of the apartment. On the floor next to Stewart was a loaded Hi-Point, Model C, 9mm, pistol, serial number P023015. On a shelf in a living room closet without doors officers recovered 21 grams of crack cocaine (lab report). Officers also recovered two cellular telephones, digital scales, ammunition and an empty magazine for a .22 caliber semi-automatic pistol. There was also a small amount of marijuana found by the officers. The location did not look lived in. There was only one mattress and box springs, no sheets or blankets, no pots and pans, no food and nothing in the closets except for a few winter items. The residence did have a small television

and an old pool table. Security bars had been installed on the front and rear doors. Stewart had $115 on his person.

Further investigation of the Ocoee Street address revealed that the lease and power were in different names, neither of them being Kaufman. The landlord stated that he rented the location for the past six months to a black male who always paid the rent on time and in cash. The person whose name was on the lease told agents that he had been paid $500 cash to rent the house initially.

Stewart refused to sign a rights waiver form, but did deny that he sold crack but also stated he knew that it was sold from the residence. He denied knowing about the crack in the closet and appeared nervous and upset. He admitted that the gun was his own. The juvenile (in the presence of his parents) agreed to talk to the police. He told agents that Cornelius Stewart was his second cousin. According to the juvenile, Stewart had invited him to the Ocoee Street apartment the day before the search to hang out with him. Stewart had a key to the location. The juvenile knew that drugs were being sold out of the residence and, based upon the actions of his cousin coming in and out of the location, he assumed his cousin was selling drugs. He observed his cousin carrying a gun on both days and confirmed that the gun found at the residence belonged to his cousin. He also observed marijuana and cigars on the table which he assumed were used to smoke marijuana. The juvenile did not know Kaufman and did not know about the crack cocaine found in the closet.

That same day, ATF and CPD executed a search warrant for Kaufman's residence, 7764 Basswood Drive. In the living room, officers recovered a loaded Rossi .38 caliber pistol, serial number W217882. In the kitchen, officers found two sets of digital scales and Pyrex measuring cups, one with cocaine residue. Officers searched the stove after the drug dog alerted to the appliance. Hidden inside the stove top officers found 353.2 grams of crack cocaine (packaged in what appeared to be ounce quantities) and 1,239.8 grams of cocaine hydrochloride (lab report). Plastic bags, boxes of baking soda and a memo book which appeared to contain drug notations were also found in the kitchen. In a cabinet, a loaded .38 caliber Smith & Wesson pistol, serial number 47547 was found. On top of a cabinet was a loaded Taurus .38 caliber revolver, serial number NK91342 and a Norinco Sport Arms Model L213, 9 x 19 mm pistol, serial number 710768. In a bedroom, the officers recovered an Intratec 9 mm semi-automatic machine pistol (serial number D053252) with a flash suppressor and three 30 round clips for the weapon. Approximately $22,505 in cash was found under two mattresses in this bedroom. In a second bedroom, the officers found a loaded and cocked 30-30 Marlin rifle (serial number 22148910) with a scope. Ammunition was also found in the residence. In addition, documents and photographs which established that Kaufman lived at this address were also recovered from the residence.

-3-

> Kaufman was arrested outside the residence. He had $1,741 cash on his person at the time of his arrest. After being advised of his rights, Kaufman told the officers that he did not want to cooperate. He acknowledged that the items found in the residence belonged to him and stated that the officers had caught him.
>
> At trial, witnesses testified that Stewart worked for Kaufman operating the crack house on Ocoee Street. There was additional testimony that more than five individuals were employed by Kaufman in this same capacity.
>
> Mr. Stewart is held responsible for the amount of drugs that were recovered from the Ocoee Street address on the day of the search, 21 grams of cocaine base. Although he is involved in a conspiracy with Mr. Kaufman to distribute cocaine base, it is unknown if the quantities of drugs found at Kaufman's residence was [sic] part of Stewart's jointly undertaken activity. Therefore, he is held responsible only for those drugs that he is directly involved with. While Mr. Stewart worked for Mr. Kaufman operating the crack house, no downward role adjustment is applied because he played no mitigating role in regard to the drugs for which he is held responsible.

PSR, ¶¶ 11-19.

At trial, the government presented the testimony of detectives from the Chattanooga Police Department and ATF Special Agent Cordell Malone as to petitioner's illegal conduct. Petitioner's trial counsel thoroughly cross-examined each of the witnesses regarding petitioner's involvement in the conspiracy, including whether he managed or controlled the building for the purpose of distributing or storing crack. *See*, *e.g.*, Trial Transcript, pp. 170-188. At the close of the government's case-in-chief, counsel vigorously argued for acquittal, asserting that there was insufficient evidence to support a finding of guilt on any of the counts, and emphasized the alleged lack of evidence as to Count Seven. This Court denied the motion, finding sufficient evidence for the jury to decide the issue. Trial Transcript, pp. 195-203.

At sentencing, Stewart's Guideline range was determined based upon only the 21 grams of crack found at the Ocoee Street duplex. Stewart was sentenced to 78 months of imprisonment on each of Counts One, Six, and Seven, to be served concurrently, and a term of 60 months on

Count Eight to be served consecutively to Counts One, Six, and Seven, for a total of 138 months. [Crim. Ct. Doc. No. 41, p. 3]. The Guideline range was subsequently lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u), so that Stewart's Guideline range from 138-157 months to 123-138 months. Stewart then filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). This Court granted that motion on July 9, 2008, reducing Stewart's sentence from 138 months to 123 months. [Crim. Ct. Doc. No. 120].

Stewart appealed his conviction, asserting the same *Miranda* violations he asserts in his Section 2255 Motion. On March 8, 2004, the Sixth Circuit rejected those claims, holding that, Stewart voluntarily and intelligently waived his *Miranda* rights. *United States v. Kaufman*, 92 F. App'x 253, 256 (6th Cir. 2004).

Stewart timely filed his Section 2255 Motion. In his motion Stewart raises four arguments. He claims: (1) the government obtained a confession by violating his *Miranda* rights; (2) that the government should not have been allowed to file a superceding indictment; (3) his counsel was ineffective in failing to contest Count Seven of the Superseding Indictment; and (4) the court failed to apply a downward adjustment for his mitigating role. Section 2255 Motion, pp. 4-5.

**II.     Standard of Review**

28 U.S.C. § 2255 states in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the

-5-

sentence.

28 U.S.C. § 2255; *see also Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). As the Sixth Circuit has held, "[i]n order to prevail upon a section 2255 motion, the petitioners 'must allege one of three bases: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Moss*, 323 F.3d at 454 (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Petitioner Stewart appealed his sentence, and he is now seeking collateral review for what he claims to have been a *Miranda* violation, an improper Superseding Indictment, ineffective assistance of counsel, and the failure of the court to apply a downward adjustment under the sentencing guidelines for his mitigating role. Section 2255 Motion, pp. 4-5. The Sixth Circuit has held that "[o]n collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.' It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Frady*, 456 U.S. 152, 166 (1982)). Petitioners must "show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair*, 157 F.3d at 430 (quoting *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

Further,

> [w]hen a section 2255 petitioner has procedurally defaulted his contentions by failing to assert them on direct appeal or via a previously litigated habeas application, he must further either prove (1) that he possessed good cause for failing to do so and would suffer actual prejudice if his averments are deemed

-6-

precluded, or (2) that he is actually innocent of the subject offense.

*Fair*, 157 F.3d at 430 (citing *Bousley v. United States*, 523 U.S. 614, 615, 118 S.Ct. 1604, 1611 (1998) (other citations omitted)).

**III.     Issues Raised**

Stewart has raised a number of issues in his Section 2255 Motion, some of which were brought up at trial or on appeal, and some of which are newly raised. The court will address each issue separately.

First, Stewart appears to claim that he invoked his right to counsel in response to *Miranda* warnings and that interrogation continued despite this invocation, eventually resulting in Stewart making incriminating statements.

Second, Stewart asserts that this court erred in allowing the Superseding Indictment which added a codefendant and increased the charges against Stewart.

Third, Stewart claims he received ineffective assistance of counsel due to his attorney's alleged failure to contest Count Seven of the Superseding Indictment, managing and controlling a building for the purpose of unlawfully storing and distributing cocaine base.

Finally, Stewart appears to contend that this court erred in failing to apply a downward adjustment for his mitigating role. Section 2255 Memo, pp. 4-5.

**IV.     Analysis**

**A.     *Miranda* Claims**

In this action, Stewart claims this Court erred in failing to suppress statements he made

-7-

after refusing to sign a written waiver of his *Miranda* rights based on the rights established in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). Stewart further claims that he requested an attorney. Section 2255 Motion, p. 4. When Stewart appealed his case to the United States Court of Appeals for the Sixth Circuit, he challenged this court's failure to suppress his confession. The appellate court found that Stewart did not request counsel, and he "voluntarily and intelligently waived his Miranda rights." The Sixth Circuit found the denial of the suppression to be valid and upheld the conviction. *Kaufman*, 92 F. App'x at 255-56.

The issues raised relating to the *Miranda* rights were resolved on appeal. *Id.* Absent highly exceptional circumstances or an intervening change in the case law not present here, a Section 2255 motion may not be used to relitigate an issue that was raised and rejected on direct appeal. *See Oliver v. United States,* 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996). Stewart did not allege any exceptional circumstances which would justify this Court allowing these claims to be relitigated. This claim is without merit.

      **B.**     **Superseding Indictment Claims**

In this action, Stewart claims this Court erred in allowing the Superseding Indictment which joined Stewart with co-defendant Kaufman. Section 2255 Motion, p. 4. Since this argument was not raised either before this Court or on direct appeal, it has been procedurally defaulted. An issue may not be raised for the first time on collateral review without showing cause for the procedural default and either actual prejudice as a result of the error or actual innocence. *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 2005); *Callanan v. United States*, 881 F.2d 229, 231 (6th Cir. 1989), cert. denied, 494 U.S. 1083 (1990); *Bousley*, 523 U.S. at 622;

*Frady*, 456 U.S. at 167-68; *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001).

Stewart appears to argue in his Section 2255 Motion that the cause for his failure to raise this issue was that his attorney was ineffective in failing to raise this issue. Section 2255 Motion, p. 5. However, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486-87, 106 S.Ct. 2639 (1986). Thus, Stewart has not shown cause for failing to raise these grounds for relief at sentencing and on direct appeal.

Stewart has also failed to establish prejudice because his claim as to the Superceding Indictment is wholly without merit. Joinder of multiple defendants is permissible under Fed. R. Crim. P. 8(b) where the defendants are, " alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Stewart and Kaufman were alleged in Count One of the Superceding Indictment to have conspired together, [Crim. Ct. Doc. No. 17], and they were convicted on Count One, [Crim. Ct. Doc. No. 41, p. 1] so there was no prejudice. To the extent that Stewart is claiming that the government cannot seek a second indictment to increase the charges, the Supreme Court held that the government may do exactly that in *Bordenkircher v. Hayes*. 434 U.S. 357, 365, 98 S.Ct. 663 (1978). Since Stewart has shown neither cause nor prejudice, his superseding indictment claim is without merit.

### C.     Ineffective Assistance of Counsel Claims

Criminal defendants are entitled to the assistance of counsel for their defense pursuant to

-9-

the Sixth Amendment of the U.S. Constitution. U.S. Const. amend. VI; *see also Moss*, 323 F.3d at 454. A right that is derivative of the right to counsel is the right to have effective assistance of counsel. *Moss*, 323 F.3d at 454; *see also Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The "benchmark of effectiveness 'must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000) (quoting *Strickland*, 466 U.S. at 686).

In *Hofbauer* the Sixth Circuit explained the two-part test for ineffective assistance of counsel as described in *Strickland*:

> First a defendant must show that counsel's performance was "deficient," involving "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." . . . . Second, even if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. To make this showing, the defendant must demonstrate that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Hofbauer*, 228 F.3d at 702 (internal citations omitted).

In this action Stewart claims his counsel failed to contest Count Seven of the Superseding Indictment, managing a drug establishment. He further asserts that he did not manage or control the building and that he only visited the building twice. Section 2255 Motion, p. 4. However, Stewart's counsel vigorously cross-examined the government witnesses as to whether Stewart really managed or controlled the building. *See*, *e.g.*, Trial Transcript, pp. 170-188. At the close of the government's evidence, defense counsel moved for acquittal on all counts, emphasizing the lack of evidence as to Count Seven. Trial Transcript, pp. 195-203. The only other evidence

-10-

defense counsel could have put on would be the defendant's own testimony, and Stewart apparently chose not to testify. *See* Trial Tr., p. 161. Thus, Stewart's claim that his attorney "didn't fight" Count Seven has no basis in fact, and defense counsel's performance was not deficient. Section 2255 Motion, p. 5.

Even if this court were to find defense counsel's performance deficient, defendant would be unable to meet the prejudice prong of the *Strickland* test. Stewart was sentenced to the same term of imprisonment on each of Counts One, Six, and Seven, to be served concurrently. [Crim. Ct. Doc. No. 41, p. 3]. Thus, even if Stewart were acquitted of Count Seven, his prison sentence would remain the same. Since Stewart fails both prongs of the *Strickland* test, his ineffective assistance claim is without merit.

### D. Role Adjustment Claims

In this action, Stewart claims this court erred in failing to grant him a reduction in sentence for his mitigating role. Section 2255 Motion, p. 5. Since this argument was not raised on direct appeal, it has been procedurally defaulted. A defaulted issue may not be raised on collateral review without showing either cause for the procedural default and actual prejudice as a result of the error or actual innocence. *Watroba*, 56 F.3d at 29; *Callanan*, 881 F.2d at 231; *Bousley*, 523 U.S. at 622; *Frady*, 456 U.S. at 167-68; *Peveler*, 269 F.3d at 698.

Stewart has failed to demonstrate cause for his failure to appeal this court's denial of a reduction for mitigating role. Further, there is no prejudice, Stewart has not demonstrated actual innocence, and this claim is without merit. This court properly denied Stewart's adjustment for his role in the offense. Stewart's argument is that his minimal role in the overall conspiracy warrants a role adjustment even though the larger conspiracy was not taken into account in

-11-

establishing his guidelines. The Sixth Circuit has rejected this argument. *See United States v. Roberts*, 223 F.3d 377, 380 (6th Cir. 2000) (citing *United States v. Roper*, 135 F.3d 430, 434 (6th Cir.) ("The salient issue is the role the defendant played in relation to the activity for which the court held him or her accountable."), *cert. denied,* 524 U.S. 920 (1998); *United States v. Walton,* 908 F.2d 1289, 1303 (6th Cir.) (explaining that although the defendants were "minor participants if one compares their activities to the scope of the conspiracy as a whole," they were not entitled to a minor role reduction because they were "held responsible [only] for cocaine that they were actively involved in distributing"), *cert. denied,* 498 U.S. 906 (1990), 498 U.S. 989, *and* 498 U.S. 990, (1990); *see also United States v. Taylor,* No. 98-3514, 1999 WL 1073663, *2 (6th Cir. Nov.19, 1999) (unpublished opinion); *United States v. Smith,* No. 94-3282, 1995 WL 63160, *2 (6th Cir. Feb.14, 1995) (unpublished opinion). The Sixth Circuit explained its rejection of this claim in *Roberts*:

> A majority of circuit courts that have considered the issue agree with our position. Our position is also fully supported by the commentary to the Sentencing Guidelines. The introductory commentary to Chapter 3, Part B of the Sentencing Guidelines, in which § 3B1.2 is found, explains:
>
>> This Part provides adjustments to the offense level based upon the role the defendant played in committing the offense. The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.,* all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction.
>
> U.S.S.G. Ch. 3, Pt. B, introductory commentary. The best reading of this commentary is that a district court should assess a defendant's role in the offense in relation to the relevant conduct that was attributed to the defendant for purposes of calculating his base offense level; "[o]therwise, a defendant could argue that [his] relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining [his] role in the offense." As the D.C.

-12-

Circuit has observed, taking the larger conspiracy into account only for purposes of determining whether a defendant played a mitigating role "would produce the absurd result that a defendant involved both as a minor participant in a larger distribution scheme for which [he] was not convicted, and as a major participant in a smaller scheme for which [he] was convicted, would receive a shorter sentence than a defendant involved solely in the smaller scheme."

Furthermore, the soundness of our conclusion is reinforced by the application notes to § 3B1.2. Application note 4 states:

> If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense. For example, if a defendant whose actual conduct involved a minimal role in the distribution of 25 grams of cocaine (an offense having a Chapter Two offense level of 14 under § 2D1.1) is convicted of simple possession of cocaine (an offense having a Chapter Two offense level of 6 under § 2D2.1), no reduction for a mitigating role is warranted because the defendant is not substantially less culpable than a defendant whose only conduct involved the simple possession of cocaine.

U.S.S.G. § 3B1.2 commentary, application note 4. Although this note applies by its terms only to a defendant who has been convicted of a lesser offense, it stands for the principle that when a defendant's base offense level does not reflect the conduct of the larger conspiracy, he should not receive a mitigating role adjustment simply because he was a minor participant in that broader criminal scheme.

*Roberts*, 223 F.3d at 380-81 (quoting *United States v. Rodriguez De Varon,* 175 F.3d 930, 943-44 (11th Cir.) (en banc), *cert. denied,* 528 U.S. 976, 120 S.Ct. 424, 145 L.Ed.2d 331 (1999) and *United States v. Olibrices,* 979 F.2d 1557, 1561 (D.C.Cir.1992)) (citing *United States v. James,* 157 F.3d 1218, 1220 (10th Cir.1998); *United States v. Atanda,* 60 F.3d 196, 199 (5th Cir.1995); *United States v. Lampkins,* 47 F.3d 175, 180-81 (7th Cir.); *United States v. Gomez,* 31 F.3d 28,

-13-

31 (2d Cir.1994); *United States v. Lucht,* 18 F.3d 541, 555-56 (8th Cir.), *cert. denied,* 513 U.S. 949, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994)) (other citations omitted).

When Stewart was sentenced, his Guideline range was determined based upon only the 21 grams of crack found at the Ocoee Street duplex when Stewart was arrested there. He was not held responsible for the larger amount of drugs involved in the greater conspiracy. [Crim. Ct. Doc. No. 41, p. 3]; *see also* PSR ¶¶ 16, 18.

In analyzing Stewart's argument for a downward adjustment pursuant to § 3B1.2 of the United States Sentencing Guidelines, the Court looks to the relevant conduct attributed to Stewart for purposes of determining his base offense level. Stewart's sentence was based on the amount of cocaine in the apartment with him when he was arrested. [Crim. Ct. Doc. No. 41, p. 3]; *see also* PSR ¶¶ 13, 16, 18. Accordingly, since Stewart's guidelines were based only on the amount of drugs he was personally responsible for, an adjustment for mitigating role was not warranted. Hence, this Court properly denied the reduction at sentencing, and this claim is without merit.

### III. Conclusion

In accordance with the analysis *supra*, Stewart's 28 U.S.C. § 2255 motion will be **DENIED**.

A separate judgment will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE